IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNARD S. LEVI, | : | CIVIL ACTION NO. **1:CV-05-1092** |
| Petitioner | : | (Judge Rambo) |
| v. | : | (Magistrate Judge Blewitt) |
| RONNIE HOLT, WARDEN, | : | |
| Respondent | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On May 31, 2005, the Petitioner, Bernard S. Levi, an inmate at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241 with attached exhibits. (Doc. 1).[1] The Petitioner filed an application for leave to proceed *in forma pauperis*. (Doc. 2). We directed service of the Petition on Respondent.[2] On June 8, 2005, Petitioner filed a Motion to Amend his Habeas Petition. (Doc. 4).

---

[1] 28 U.S.C. § 2241(c)(3) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . (3) [h]e is in custody in violation of the Constitution or laws of the United States . . ." Petitioner claims in part that he lost too many good conduct days as a disciplinary sanction, and he seeks the removal of the sanctions including restoration of all of his good time days (i.e. 27 days). Thus, Petitioner has properly brought his claims affecting the length of his confinement in a habeas petition. *See Nelson v. Campbell*, ____ U.S. ___, 124 S.Ct. 2117, 2124 (2004). However, as discussed below, Petitioner 's injunction motion claims (Docs. 10 & 11) are not core habeas claims cognizable in his habeas corpus petition.

[2] Petitioner names as the Respondent the Warden at FCI-Schuylkill, who is the proper Respondent. 28 U.S.C. Sections 2242 & 2243.

In the original Petition and amendment, Petitioner essentially claims as follows: his disciplinary hearing was in violation of his Fifth Amendment due process rights; the sanctions imposed by the DHO were arbitrary and excessive; and the evidence against him was insufficient to find him guilty of the charge in the incident report (*i.e.* engaging in a sexual act) and he was charged with the wrong offense, (*i.e.* a 205 Code Offense). (Doc. 1, p. 6, Doc. 6, pp. 5-10 & Doc. 4).[3]

On June 27, 2005, Petitioner filed a Motion for Preliminary Injunction and Temporary Restraining Order. (Docs. 10 & 11).[4] Respondent filed his opposition Brief to the Injunction Motion on July 1, 2005. (Doc. 15). Petitioner then filed a Reply Brief on July 22, 2005. (Doc. 16). In his Injunction Motion, Petitioner claims that after he was confined in the SHU on March 7, 2005, he was denied access to an adequate law library and access to his subscription to the Prison Legal News Magazine. We agree with Respondent (Doc. 15, pp. 3-4) that these Injunction Motion claims are not related to his present habeas claims and that they are not properly raised in a § 2241

---

[3] Petitioner argues, in part, that he should not have been charged with a Code 205 severe offense, engaging in a sexual act, since it only applies to inmates caught in a homosexual act with another inmate and not to the conduct he was charged with, *i.e.* by himself, fully clothed without exposing himself and without making advances toward the complainant. (Doc. 4, p. 4). Rather, he claims that he should have been charged with a moderate category Code 300 series offense. However, Petitioner claims that Respondent wanted a greater punishment for him since the DHO and prison officials at FCI-Schuylkill were friends of the complainant's (Mrs. Feger) husband who was an officer at the prison. *(*Doc. 4, pp. 4-5).

[4] Petitioner's Injunction Motion was docketed twice, even though it is one document, once as a Preliminary Injunction Motion and then as a Temporary Restraining Order Motion. (Docs. 10 and 11).

habeas petition. Since Petitioner's injunction claims seek access to an adequate law library and his magazine subscription, they do not relate to a speedier release from confinement and are not at the core of a habeas petition. As such, the injunction claims are cognizable as *Bivens* claims under 28 U.S.C. § 1331. *See Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005); *Carson v. Johnson*, 112 F. 3d 818, 820-821 (5th Cir. 1997) ("If a favorable determination ... would not automatically entitle [Petitioner] to accelerated release, the proper vehicle is a § 1983 [civil rights] suit.") (citations omitted). Thus, we shall recommend that Petitioner's Motion for Preliminary Injunction and Temporary Restraining Order (Docs. 10 & 11) be denied.

The Petition was served on the Respondent, and his Response with attached Exhibits was filed on July 1, 2005. (Doc. 13). Petitioner filed a Traverse on July 12, 2005. (Doc. 14). The Petition is now ripe for disposition.[5]

In the instant Habeas Corpus Petition, as well as the Traverse, Petitioner challenges his disciplinary hearing conviction, as well as his disciplinary sentence, as violative of his Fifth Amendment due process rights on the grounds that he was charged with and found guilty of conduct that he did not commit, namely engaging in a sexual act (Offense Code 205), since he was not caught in a sexual act with another inmate, he did not expose himself and he did not make a sexual gesture or advance towards the complainant. (Doc. 6, p. 5). Petitioner claims that no other inmate has been charged with Offense Code 205 when an inmate, such as he, was not caught

---

[5]On August 1, 2005, Petitioner filed another habeas petition with this Court, Civil No. 05-1533, M.D. Pa., in which he challenges another incident report, # 1319271, dated March 7, 2005 charging him with engaging in a sexual act, based on the same grounds as presented in his instant Habeas Petition.

engaging in a sexual act with another inmate.  Petitioner also claims that he did not receive a fair disciplinary hearing since he was properly and fully clothed at the time of the incident, surrounded by other inmates who did not witness him engaged in any sexual act in the law library on December 21, 2004.  Thus, Petitioner argues that there was insufficient evidence to support the charge he was found guilty of committing.  The Petitioner also claims that the DHO sanctions were arbitrary and excessive.   (Doc. 6, pp. 5-6).[6]

      Specifically, the Petitioner's claims at issue are that there was insufficient evidence to support the charge (Code 205) of which he was found guilty by the Disciplinary Hearing Officer ("DHO") and that he was deprived of his due process rights.  Petitioner argues that there was no evidence that he exposed himself, had sex with another inmate and removed any of his clothing.  Thus, he contends that he could not have been found guilty of Code 205, engaging in a sexual act. (Doc. 6, pp. 7-9).  Petitioner also states that the DHO imposed excessive sanctions and that he received more severe punishment than inmates who exposed themselves to female staff without any clothing "while playing with themselfs (sic)."  (*Id*., pp. 8-10).  Petitioner claims that he was charged with the more severe 200 series offense instead of an appropriate 300 series offense because of his complaints and lawsuits against prison staff.  (*Id*., p. 9 & Doc. 4, p. 2).  Thus, Petitioner contends that he did not receive proper due process rights since he was charged with the

---

[6]Respondent concedes that Petitioner has exhausted his administrative remedies with respect to his DHO due process claim and excessive sanctions claim.  (Doc. 13, p. 2).

...
...

wrong offense[7] and that there was insufficient evidence presented as his disciplinary hearing to support the charge of which he was convicted. In his Petition, Petitioner also challenges the sanctions imposed by the DHO, which he claims were excessive. The Petitioner indicates the relief he seeks in his Habeas Petition as expungement of the DHO's decision and the incident report of December 21, 2004 and the restoration of all good time credits and all privileges which were lost as sanctions. In the alternative, Petitioner seeks the reduction of the charged offense code to a lesser code and to expunge the excessive sanctions imposed by the DHO. (Doc. 6, p. 13).[8] He states that he was sanctioned to 30 days disciplinary segregation, loss of various privileges for 6 months and 27 days loss of good conduct time, which were excessive, and that the sanctions imposed by the DHO were arbitrary, unreasonable and not proportionate to the act committed.[9] (*Id.*, p. 10). Petitioner is seeking, as mentioned, the removal of the disciplinary conviction and sentence from his record, as well as the return of his lost good conduct time and lost privileges.

---

[7]In his amendment to his Habeas Petition, Petitioner states that he did not commit a Code 205 offense, a severe charge, since there was no victim and no injury to anyone and that he was charged with the more severe offense due to retaliation for his constant complaints about prison staff. (Doc. 4, p. 2).

[8]As an attachment to his amendment, Petitioner includes moderate and low moderate offenses which he claims were more suitable to his charged conduct than the high severe offense with which he was charged. (Doc. 4, Exhibits).

[9]Petitioner's challenge to his disciplinary conviction and resulting punishment affect the length of his sentence, and as noted above, a habeas corpus petition is the proper remedy. *See Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002). On the contrary, Petitioner 's injunction claims that he was denied access to an adequate law library and that he was not given his magazine subscription after being placed in the SHU are not core habeas claims and are cognizable in a civil rights action.

(Doc. 6, pp. 13).[10]

## II. Discussion.

### 1. *Exhaustion.*

It is well-settled that before a prisoner can bring a habeas petition under 28 U.S.C. § 2241, administrative remedies must be exhausted. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996). The Petitioner indicates in his Petition, as well as with his attached exhibits thereto, that he has exhausted all of his available administrative remedies regarding his challenge to his disciplinary hearing and sanctions, and that the BOP upheld the disciplinary conviction and the sanctions imposed. (Doc. 6, p. 3). The Respondent concedes that exhaustion has occurred in this case. (Doc. 13, p. 2). Accordingly, we find that Petitioner has exhausted his administrative remedies with respect to his present due process hearing and excessive sanctions claims.

### 2. *DHO Claims.*

As stated, the Petitioner claims that his January 3, 2005 DHO hearing violated his due process rights because he was found guilty without sufficient evidence, and because he was charged with the wrong offense, *i.e.* engaging in a sexual act, since he had his pants on and did not expose himself. The Petitioner also claims that his rights were violated by the DHO because the DHO arbitrarily imposed sanctions that were excessive under the BOP policy.

---

[10] In his amendment, Petitioner reiterates his stated requests for relief, which include requests that the December 21, 2004 incident report be expunged and that his 27 days of vested good conduct time be reinstated. (Doc. 4, p. 3).

The Petitioner alleges that on December 21, 2004, while he was incarcerated at FCI-Schuylkill, he was sitting in the law library reading the newspaper. He was fully dressed with his pants on, and he did not expose himself. Petitioner claims that he was then accused by a lieutenant ("Lt.") who said that "I exposed my penis" which was false. (Doc. 6, pp. 3-4). Petitioner states that the Lt. then conferred with Mrs. Feger, the complainant, and returned to Petitioner and "stated Mrs. Feger said she saw me with a 'bulg' in my pants and that I had grabbed myself while fully clothed, and at no time was I looking at Mrs. Feger with lust." (*Id.*, p. 4). The Petitioner states that he was taken to the SHU and detained there. He then received a disciplinary incident report (# 1294300) charging him with engaging in a sexual act, in violation of BOP Code 205.[11] Petitioner states that the charge was erroneous since he did not have sex with himself, he was not involved in a sex act with another inmate and he was fully clothed at the time. Petitioner also claims that Mrs. Feger was coerced by prison staff into making the charge against him in retaliation for his complaints and lawsuits against staff members and BOP officials. (Doc. 6, p. 5).[12] Petitioner does not claim that

---

[11]*See* Doc. 13, attached Incident Report, Ex. B.

[12]In the Incident Report, Mrs. Feger, the reporting staff member stated, in part, as follows:

Description Of Incident (Date: 12/21/2004 Time: 9:20 AM Staff became aware of incident). On Tuesday, December 21, 2004, inmate Levi # 00283-016 was in the education leisure library. Inmate Levi seated and positioned himself in a library chair so that he had a clear view to the education office that Mrs. Krakowski and I were in. I felt as though I was being watched and when I looked into the library I observed inmate Levi watching me in a lustful manner while he was stroking and rubbing his penis. I could clearly see that inmate Levi had an erect penis in the right side of his pants. Inmate Levi continued these actions over a period of time. The lieutenant was notified. Inmate Levi was escorted to the special housing unit.

7

he had filed any prior complaints or lawsuits against complainant, Mrs. Feger (prison teacher) or that Mrs. Feger had any reason or motive of her own to retaliate against him.  Nor does Petitioner substantiate his claim that he filed any prior actions against any prison staff and that the staff was retaliating against him.

On December 21, 2004, Petitioner received a copy of the incident report. (Doc. 13, Ex. B, Incident Report (also marked as Doc. 13, Exhibit 1, p. 3)).[13]  An investigation ensued.  The incident report was then referred to the Unit Disciplinary Committee ("UDC") for disposition.  (*Id*. at Ex. 1, p. 4).  Petitioner was given the opportunity to make a statement during the investigation, and he did so.  (*Id*.).  Petitioner indicated that he was typing and must have scratched or rubbed his leg.  (*Id*. @ ¶ 24.).  On December 22, 2004, the UDC referred the Incident Report to the DHO for a hearing.  (Doc. 13, Ex. 1, p. 3).  The UDC recommended that if found guilty, the Petitioner should receive appropriate sanctions.  (*Id*., ¶ 20.).  Petitioner was advised of all his rights and of the charge on December 21, 2004. (Doc. 13, Ex. 1, p. 4, ¶'s 23.-24.).  Petitioner did not request any witnesses.

In his amendment, Petitioner claims that the UDC and DHO did not make a finding if he was charged with the correct offense. (Doc. 4, pp. 3-4).  However, the Investigation Section on the

---

(Doc. 13, Ex. B,  Incident Report, ¶ 11.).

[13]Petitioner did not attach a copy of the Incident Report and DHO Report to his Habeas Petition or Traverse, Docs. 1, 6 & 14.

Incident Report clearly indicated that a factual determination was made as to the appropriateness of the charge made against Petitioner based on his alleged conduct. (Doc. 13, Ex. 1, p. 4, Part III). Thus, we find no merit to this claim of Petitioner.

On January 3, 2005, Petitioner had his disciplinary hearing before the DHO.  (*Id*., Ex. 1, p. 7 (also marked as Ex. C to Doc. 13)). Petitioner waived his right to a staff representative.  (*Id*.). Petitioner denied the charges and made the following statement, "I was fully clothed and I never pulled my penis out of my pants." (*Id*. at Section III.). Petitioner also provided a two page handwritten statement.  No procedural issues were noted and no documentary evidence was submitted by Petitioner. (*Id*.).

The DHO found Petitioner guilty of charged offense, namely engaging in a sexual act, Code 205, and sanctioned Petitioner to a thirty (30) days disciplinary segregation, twenty-seven (27) days loss of good conduct time.  (*Id*. at pp. 8-9 ).  Petitioner also lost phone and visiting privileges for 180 days.  (*Id*., p. 9).

Petitioner claims that the disciplinary hearing violated his rights since the DHO finds inmate guilty in "99.9 percent of cases" brought before him.  (Doc. 6, p. 6).[14]  Petitioner also claims that there was not sufficient evidence to support the charge of which the DHO found him guilty since he was fully clothed and did not expose himself, that the DHO's decision was arbitrary and capricious and violated due process since the statement of his witness, inmate Williams, was disregarded by the DHO, and and that the sanctions imposed by the DHO were  excessive since

---

[14]In his amendment, Petitioner states that the DHO finds inmates guilty in "100% percent of cases" before him. (Doc. 4, p. 5).  Petitioner did not offer any evidence to support this claim.

the DHO was friends with Mrs. Feger and her husband, who was an officer at the prison. (Doc. 6, pp. 6-10).

Prior to Petitioner appearing before the DHO for his Discipline Hearing, he was advised of his rights on December 22, 2004. (Doc. 13, Ex. 1, p. 7, DHO Report). As stated, he was given advance written notice of the incident report by receiving a copy of it on December 21, 2004. (*Id.*, p. 1). The DHO hearing was held on January 3, 2005, and Petitioner indicated that he waived his right to a staff representative. Petitioner requested a witness (inmate Williams) and his witness was called and testified as follows:

> I was at the desk and he (LEVI) came over to get a newspaper. I never knew what was happening until afterwards. LEVI came back and gave me the newspaper. He was sitting at the second table next to the copy machine. I don't know what LEVI was doing after he had gotten the newspaper and I don't know where Mrs. Fegor or Mrs. Krakowski were doing during that time. I saw Mrs. Krakowski leave and come back and that is all.

(*Id.*, p. 8, ¶ III. C.). Petitioner was also advised of his rights at the DHO hearing. Petitioner denied the charge (Offense Code 205) and stated that he was clothed and did not expose himself on the day in question. (*Id.*, p. 7).

After reviewing the evidence, the DHO found that Petitioner committed the prohibited act of engaging in a sexual act, in violation of BOP Code 205. (*Id.*, p. 8, ¶ V.).[15] The DHO, after finding the Petitioner guilty of the stated charged offense, imposed the aforementioned sanctions. (*Id.* at p. 9). Petitioner was given a copy of the DHO Report on January 4, 2005. (*Id.* at p. 9). Petitioner

---

[15]Since the specific evidence upon which the DHO relied to find Petitioner guilty of the stated offense is contained in the DHO hearing report, Doc. 13, Ex. 1, DHO Report, pp. 8-9, ¶'s III.- V., we shall not reiterate it herein.

10

was advised of his right to appeal the DHO's finding through the BOP's administrative remedy process. (*Id.*, ¶ VIII.).  As stated, the Respondent does not contest the Petitioner's claim that he exhausted these remedies prior to instituting the present action.

### 3. DHO Due Process.

While extreme limitations on the due process rights that arise from the Fourteenth Amendment have been imposed by the Supreme Court in *Sandin v. Connor*, 515 U.S. 472 (1995), the applicability of those protections to matters where an inmate is faced with the loss of good time credit was left undisturbed.  We must therefore evaluate the disciplinary proceedings in this context.[16]

Petitioner, as stated, essentially makes two claims.  First, Petitioner contends that he was deprived of his due process rights since the evidence was not sufficient to support the charged offense due to the undisputed facts that he was fully clothed and did not expose himself, since the DHO finds inmates guilty 99.9% of the time and, since the DHO disregarded the testimony of his witness, *i.e* inmate Williams. Second, Petitioner claims that the sanctions imposed by the DHO were excessive.

The December 21, 2004 Incident Report was timely received by Petitioner on the same day that it was issued and on day the incident in question occurred.  This was within the required 24 hours as mandated by his due process rights and BOP policy. (Doc. 13, Ex. 1, DHO Report, p. 7). It is undisputed that BOP policy, namely 28 C.F.R. §541.17(a), requires that the inmate be given

---

[16]The BOP's guidelines for inmate disciplinary proceedings are found under 28 C.F.R. §541.10, *et seq.*, and we shall not reiterate them herein.

11

advance written notice of the charges against him no less than 24 hours.  On December 22, 2004, Petitioner had his UDC hearing, and he was advised that the incident report was being referred to the DHO for a hearing.  As mentioned, the DHO hearing was held on January 3, 2005.

What is disputed in this case is whether there was sufficient evidence that the Petitioner was guilty of the charged offense and whether the DHO considered the testimony of inmate Williams.

As Respondent states, Petitioner was given the chance to request witnesses, and he did so, *i.e.* inmate Williams.  The DHO Report, Doc. 13, Ex. 1, p. 8, indicates that this witness was called and testified.  Clearly, inmate Williams' stated testimony does not prove that Petitioner did not commit the charged offense and it does not refute the evidence against Petitioner.  In fact, Williams stated that he did not know what Petitioner was doing (at the relevant time) after he had gotten the newspaper, and he did not know what Mrs. Feger was doing.  Nor does Williams' testimony controvert the eyewitness account of Mrs. Feger.  The DHO Report indicates that Petitioner did not present any documentary evidence.  (*Id*., p. 7).

Petitioner, in his Traverse, states that he was not properly charged with a Code 205 offense since there was no victim and no injury to anyone.  (Doc. 4, p. 4).  Petitioner states that even though there was no evidence that he exposed himself and he was fully clothed, he was charged with the more severe offense since the DHO was working in concert with the prison officials, who were friends of Mrs. Feger's husband, an officer at the prison.  (*Id*., pp. 4-5).  Petitioner claims that he should have been charged with a 499 series offense for disruptive conduct, which is a low moderate category offense.  (*Id*., p. 5).  We find no merit to Petitioner's claims, since there clearly was a victim, *i.e.* Mrs. Feger, and since Mrs. Feger's eyewitness rendition of the incident clearly

supports the charged offense.

While Petitioner claims to have been charged with a more severe offense due to retaliation, he does not support this claim with any evidence. Further, the DHO did consider Petitioner's claim that he was fully clothed and did not expose himself, but he found the eyewitness rendition of the facts from Mrs. Feger that she saw him looking at her in a lustful manner while he was continuously stroking and rubbing his erect penis and that she could clearly see he had an erect penis on the right side of his pants. (Doc. 13, Ex. 1, p. 8, ¶ V.). Notwithstanding the facts that Petitioner did not remove his clothing or expose himself, there was clearly enough evidence to find him guilty of the charged offense, engaging in a sexual act. Additionally, the other evidence which the DHO relied upon was more than ample to support his guilty finding. (*Id.*, ¶ V.).

There is no evidence contained in the record that the reason why Petitioner was charged with a more severe Code 205 offense was due to the stated retaliation against Petitioner by the prison staff. Petitioner only offers his unsubstantiated averment as support for his contention. Secondly, the Petitioner claims that there was not sufficient evidence presented at the DHO hearing to support the charge against him. Petitioner states that he did not remove his clothing and he did not expose himself. However, as discussed, there was more than ample evidence to show that Petitioner engaged in a sexual act despite being fully clothed. As the DHO stated, "Levi's actions of self gratification (Masturbation) supports the charge of engaging in a sexual act since it's (sic) sole intention is of sexual gratification." (Doc. 13, Ex. 1, p. 9). Thus, we find no merit to Petitioner's assertion that the evidence was not sufficient to prove that he was responsible for engaging in a sexual act. We also find that the DHO pointed to the specific evidence upon which he relied to

meet the greater weight of the evidence standard.  (Doc. 13, Ex. 1, pp. 8-9).

As explained in detail by the DHO, the evidence upon which he relied was not vague or arbitrary, nor was it insufficient, as Petitioner claims.  (Doc. 13, Ex. 1, DHO Report, pp. 8-9).  We agree with Respondent that the greater weight of the evidence supported the DHO's decision that Petitioner was guilty of the charged offense.

Due process requires that the prisoner receive written notice of the charges against him no less than twenty-four (24) hours before the hearing;[17] that the prisoner be given a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action taken; that the prisoner be afforded a qualified right to call witnesses and present documentary evidence in his own defense; and that an illiterate inmate be entitled to help from a fellow inmate.  *Wolff v. McDonnell*, 418 U.S. 539 at 564-571 (1974).  We agree with Respondent that the requirements of *Wolff* were met in this case.

Petitioner was provided with written notice of the charge on December 21, 2004 when he was given a copy of the Incident Report.  (Doc. 13, Ex. B, Incident Report).  As the DHO hearing was convened on January 3, 2005, Petitioner was afforded notice well within the requisite twenty-four-hour period before the DHO hearing.  Petitioner was also afforded the right to call witnesses, and called inmate Williams.  DHO Bittenbender, an impartial officer, conducted the hearing and articulated the basis for his findings in his DHO Report.  (*Id. at Ex. C,* DHO Report).  As to the last requirement under *Wolff*, Petitioner was afforded the right to a staff representative at his hearing,

---

[17]The 24 hours advance notice must be made before the inmate's appearance in front of the DHO.  28 C.F.R. §541.17(a).

and he waived this right.

Additionally, the record must be supported by some evidence. *Superintendent v. Hill*, 472 U.S. 445 (1985). "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' *United States ex rel. Vajtauer v. Commissioner of Immigration at Port of New York*, 273 U.S. 103, 106 (1927). Ascertaining whether this standard is satisfied does not require exhaustion of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455, 456. (Citations omitted). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of the prison administrators that have some basis in fact." *Id.* at 456.

Prior to the DHO hearing, Petitioner was advised of his rights. During the course of the disciplinary hearing, the DHO heard testimony from the Petitioner, who indicated that he did not expose himself or disrespect the complainant. The DHO relied upon the written Incident Report and investigation, as well as documentary evidence listed in the DHO Report at ¶ III. D. The DHO found that, despite Petitioner's testimony and despite Petitioner's claim that he did not remove his clothes and expose himself on the day in question, Petitioner did look at Mrs. Feger in a lustful manner while stroking and rubbing his erect penis in his pants. Thus, the DHO found that Petitioner was responsible for engaging in a sexual act based on the evidence as discussed above. Further, we find Petitioner's argument that there was insufficient evidence due to the undisputed facts that he did not remove his pants and expose himself to be completely baseless. Rather,

15

Petitioner's conduct as charged by Mrs. Feger, along with corroborating evidence, were the basis of the DHO's finding, and this was clearly substantiated by the evidence.  Petitioner's claim that his testimonial evidence from inmate Williams was disregarded by the DHO in violation of his due process rights is also unsupported, as stated above.

Petitioner ignores the fact that, according to the Incident Report, he was not charged with exposing himself or engaging in a sex act with another inmate.  Therefore, we find no merit to the arguments of Petitioner that he was charged with a more severe offense for retaliatory reasons, that there was insufficient evidence to find him guilty of the charge and that he was deprived of his due process rights.   We find that there was sufficient evidence for the DHO's determination that the Petitioner engaged in a sexual act.

Accordingly, we do not find any merit to Petitioner's due process claims.

### 4. *Sanctions Imposed.*

Finally, we agree with Respondent that Petitioner's sanctions imposed by the DHO were neither arbitrary nor capricious.  The sanctions were also within the BOP's policy for the severity of the prohibited act of which Petitioner was found guilty.  (Doc. 13, pp. 4-5).

The BOP regulations provide the following sanctions for a Code 205 engaging in sexual act offense:

> B.   Forfeit earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

16

        B.1    Disallow ordinarily between 25 and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

        D.    Disciplinary segregation (up to 30 days).

        F.    Withhold statutory good time.

        G.    Loss of privileges: ... .

28 C.F.R. § 541.13, Prohibited Acts and Disciplinary Severity Scale, p. 583.

We agree with Respondent (Doc. 13, p. 5) that Table 3 of 28 C.F.R. § 541.13 allows for the exact sanctions which the DHO imposed on Petitioner for his high severity offense.

We therefore agree with Respondent that Petitioner's stated sanctions for his Code 205 violation were within the BOP regulations.

The DHO also documented his reasons to impose the stated sanctions for the offense, particularly due to the commission of the charged sexual offense by the Petitioner in view of female staff. (Doc. 13, Ex. 1, p. 9, DHO Report, ¶ VII.).

## III. Recommendation.

Based on the foregoing, we respectfully recommend that the Petitioner's Habeas Corpus Petition **(Doc. 1)** be denied.  We also recommend that Petitioner's Motion for Preliminary Injunction/Temporary Restraining Order **(Docs. 10 & 11)** be denied.

        **s/ Thomas M. Blewitt**
        **THOMAS M. BLEWITT**
        **United States Magistrate Judge**

**Dated: August 31, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNARD S. LEVI, | : | CIVIL ACTION NO. **1:CV-05-1092** |
| Petitioner | : | (Judge Rambo) |
| v. | : | (Magistrate Judge Blewitt) |
| RONNIE HOLT, WARDEN, | : | |
| Respondent | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing Report and Recommendation dated **August 31, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                            **s/Thomas M. Blewitt**
                                            **THOMAS M. BLEWITT**
                                            **United States Magistrate Judge**

**Dated: August 31, 2005**